[No. 3884.]

## WILMORE V. KALBERER.

1. LANDLORD AND TENANT—*Lease Construed.* A lease of farm lands provided that the landlord should furnish three horses, and that the tenant should "feed all teams at his own expense."

*Held* that the tenant was not entitled to charge the landlord for the care and feed of an animal actually worked and used on the premises, no matter how worthless.

2. TRIAL—*Pleading and Evidence—Matters Not in Issue.* To receive evidence of misconduct of plaintiff toward defendant, nowhere alleged in the pleading is error.

*Error to Denver District Court.* HON. HARRY C. RIDDLE, Judge.

Mr. THOMAS B. STUART, Mr. CHARLES A. MURRAY, for plaintiff in error.

Mr. R. D. REES, Messrs. ALLEN & WEBSTER, for defendant in error.

HURLBUT, J., delivered the opinion of the court.

Action in the Denver district court by plaintiff (plaintiff in error) against defendant, to recover judgment for moneys laid out and expended for defendant, and for the value of goods, wares and merchandise received by him for plaintiff. Defendant pleaded a counterclaim and recovered judgment thereon, from which this appeal is prosecuted.

The pleadings show that defendant was in possession of certain farm premises described in the complaint, under a written lease from plaintiff, for one year, beginning December 1, 1905. The lease contains many covenants and agreements, some of which are as follows:

"And lessee shall pay as rent one-half (½) of all hay, grain and other produce raised on said ranch, shall do all necessary work to raise and harvest said crops, and furnish all tools, seed and machinery to do the work; and keep the small ditches in order, feed all teams at his own expense, and not use the said Wilmore's horses for any other purpose than actual work on the ranch. The hay shall be divided in the stack; the grain shall be divided as soon as it is threshed; and all grain belonging to the party of the first part shall be put in the granary or loaded on the car, and the party of the first part shall pay for the loading of his half; the apples to be sold by the party and the second part and the money be equally divided, and all other produce or income from said ranch shall be equally divided. Settlements shall be made in dividing all moneys immediately at the time the same is paid for. The party of the first part shall furnish three (3) horses, all the tools, machinery, wagons and harness now on the place; pay for seventy (70) inches

of water; pay one-half (½) the threshing bill and furnish one-half (½) of the seed and one-half (½) of the boxes or barrels for the apples, it being understood that nothing shall be sold off from the place before division without the mutual consent ·of the parties hereto, and settlements shall be made in dividing all money immediately at the time the same is paid for any hay, grain or produce when the same is sold off from the place, it being understood that · the said Wilmore shall at all times have general supervision of the place as to the course to be pursued in general.''

Defendant's answer contained a counter-claim to the effect that plaintiff was indebted to him in the sum of $59.60 for the care and keep of a mare named ''Maud,'' from March 1 to June 10, and from September 1 to October 17, 1906, at a reasonable charge, as claimed, of 40 cents a day; for the sum of $220 for moneys expended in hiring a team to work on the ranch, made necessary by plaintiff's failure to furnish him with three horses to do such work; also for several small sums aggregating $9.53, making· a total counter-claim of $289.13.

Defendant's evidence shows that he had been in possession of the ranch from December 1, 1904, to December 1, 1905, under a written lease substantially identical with the one now before us; that. two horses, called ''Bob'' and ''Barney,'' and the mare ''Maud,'' were on the ranch at the time both leases were signed, and remained there throughout 1904, 1905 and 1906, except as to ''Barney,''· who died in 1906; that· Wilmore had four other horses on the place besides ''Bob'' and ''Maud''· during 1906, up to June 10th, at which time one team was taken away to haul lumber and never returned, leaving on the ranch two good horses that could work, besides ''Bob'' and ''Maud''; that ''Bob'' and ''Maud'' worked there during the summer 1905, and some of the

time during 1906; that for 110 days in 1906 defendant hired a team to work on the ranch, and paid therefor $220, or $1 per day per horse.

The direct and cross-examination of defendant conclusively shows, by his admissions, that he owed plaintiff $161.21, which he sought to overcome by his counter-claim, and also that plaintiff furnished two serviceable horses during the term of the lease; hence, under defendant's own showing, plaintiff could not have been in default as to the third horse for more than $110 for the 110 days. The remaining $110 of the $220, subtracted from the counter-claim of $289.13, would leave it $179.13. This computation is based entirely upon defendant's evidence, ignoring that of plaintiff altogether, which shows an indebtedness from defendant to him of approximately $305. The item of $59.60 for feeding "Maud" is included in the counter-claim of $179.13. Under the terms of the lease defendant was precluded from asserting this item as a claim against plaintiff. The lease reads that the lessee (defendant) shall "feed all teams at his own expense." There is no ambiguity about this provision. The animal "Maud" had been used on the ranch as a farm and team horse during the entire term of the first lease, and was there at the time the present lease went into effect. It must have been within the contemplation of the parties that she would remain there for the full term of the new lease and be used as a team horse, hence defendant contracted to feed her at his own expense. To hold otherwise would violate the rule, that the terms and conditions of a written contract cannot be varied by parol. This covenant is not affected by another clause of the lease, viz., "The party of the first part shall furnish three (3) horses, all the tools, machinery, wagons and harness now on the place," for whether the phrase "shall furnish three horses" refers to horses ·

then on the place or to any three horses plaintiff might choose to place thereon, is immaterial, as defendant contracted to feed all teams at his own expense. In the light of the evidence there can be no doubt that defendant realized he was obligated by the contract to feed all team horses on the place at the time the lease took effect. It is undisputed that from the time the lease began until June 10, 1906, plaintiff had on the ranch six horses, including "Bob" and "Maud," but no claim is made by defendant for feeding any of these animals except "Maud." Aside from what has just been said on this point we think the weight and force of the evidence is with plaintiff. It is undisputed that defendant worked "Bob" and "Maud" with other horses of plaintiff, throughout the season of 1905, but he testifies that those two animals became worthless and of no use as farm horses during the year 1906. The witness Williamson testified that he was employed by defendant in harvesting grain during August, 1906; that four horses belonging to plaintiff, viz., "Bob," "Maud," "Fanny" and "Nellie," were on the ranch at that time; that he mowed and hauled hay with "Maud" and run the mowing machine with her and a mate, and worked both horses under instructions from defendant; that "Maud" was used for hard work on the farm while he was there, and that the only trouble with her was a swollen leg. Asmussen, defendant's witness, testified that he did not think her leg was any worse in 1906 than it had been in 1905. Defendant's witnesses Webster and Dibble testified that there was nothing the matter with the animal except a stiff leg, and that she was in fair condition, was not dead lame, but just limped, and that she was a good mare. Now the witnesses Sharp and Park, called by plaintiff, testified that they used "Maud" in 1907 for plowing and general farming purposes, and she did such work

satisfactorily and fairly well. It seems strange that she should render fair services as a farm horse in 1905 and 1907 but be incapacitated for any kind of farm work during the year 1906. Defendant does not deny that the witness Williamson worked "Maud" on the ranch in 1906 as stated, but says he did not do so at defendant's direction. Williamson was in defendant's employ at this time, and it is to be presumed that he was performing services for defendant and no one else. If he had been working the animal against defendant's desire, the latter would have stopped him from so doing. The evidence fairly shows that both "Bob" and "Maud" did considerable work upon and around the ranch in 1906, and were included in the six horses of plaintiff on the ranch when the lease went into effect. Under these circumstances defendant was not authorized to charge plaintiff for the care and keep of "Maud." Assuming the truth of defendant's statement that the animal was perfectly worthless as a farm horse during 1906, then he should have refused to use her for any purpose. It is stated in the answer that "at the instance and request of plaintiff" defendant kept and fed a certain horse, etc. Defendant was on the stand as a witness, but gave no testimony supporting this allegation. The item of $59.60 should have been deducted from defendant's counter-claim of $179.13. This would leave the counter-claim $119.53, which, subtracted from the admitted amount due plaintiff, $161.21, shows an indebtedness of $41.68 against defendant.

We think another error occurred during the course of the trial which is fatal to the judgment, viz.: Considerable testimony was permitted to go to the jury, under strenuous objections of plaintiff, concerning the alleged sale of a certain team by plaintiff. Defendant claimed this team belonged to him, and that he placed it in the

possession of plaintiff to make a sale thereof for defendant's benefit. The evidence so admitted on the part of defendant tended to show that plaintiff undertook to, and did, sell the team, but never accounted to defendant therefor. This evidence was highly prejudicial to plaintiff, and it is reasonable to presume had considerable bearing on the minds of the jury upon the rights of the parties. From such inadmissible testimony the jury might have been justified in presuming that plaintiff had wronged defendant out of this team. It is true that plaintiff denied the evidence of defendant in this respect after the court had permitted it to go to the jury, but as the jury apparently supported defendant in every issue, it is not unreasonable to suppose that they may have considered this team transaction as an aggravation of defendant's wrongs, and so entertained a doubt as to plaintiff's honesty and integrity. This testimony was in no sense admissible. There was no suggestion in defendant's pleadings that he had any claim whatever against plaintiff for moneys received by him from the sale of defendant's horses. Not a word can be found in the pleadings tendering such issue. The testimony concerning the transaction was in no way material to any other issue in the case. Its admission tended to no purpose but to prejudice the jury against plaintiff. It is suggested by counsel, however, that the testimony was material in some way as affecting the final settlement and accounting between the parties for matters arising out of the lease of the year 1905. We fail to discover its materiality. Both parties admit that the accounting for the year 1905, which showed a balance due from defendant to plaintiff of $68.79, was correct. There is no pleading by defendant suggesting that any mistake was made by the parties in making this settlement, nor that defendant desired a readjustment of such settle-

ment on the ground of fraud or mistake. The court would not permit any testimony showing the value of this team. This ruling was right, but it did not remove from the minds of the jurors the unfavorable impression against plaintiff which they might have possessed, as to his want of honesty in selling defendant's team without accounting to him for the proceeds. It really left them at liberty, if possessed of such impression, to guess at the value of the team, and charge it against plaintiff in their deliberations. We think the admission of testimony concerning the alleged sale of defendant's team was error, and that it affirmatively appears from the record to have been highly prejudicial to plaintiff's rights.— *Denver S. P. & P. R. Co. v. Wilson et al.*, 12 Colo., 20, 20 Pac., 340; *City of Pueblo v. Griffin*, 10 Colo., 366, 15 Pac., 616; *Denver Tramway Co. v. Reid*, 22 Colo., 349, 45 Pac., 348; *The Smuggler Union M. Co. v. Broderick*, 25 Colo., 16, 53 Pac., 169; *Loloff v. Sterling*, 31 Colo., 102, 71 Pac., 1113.

Other errors are discussed in the briefs, which we do not deem necessary to notice in this opinion, owing to the conclusions we have already expressed.

We have not attempted to construe that clause in the lease above quoted, relating to the furnishing of three horses, tools, etc. Even if that construction of the clause contended for by defendant be adopted, it would not change the result we have reached.

Both parties to this appeal appear to be men of modest means, and it is to be regretted on their account as well as that of the state, that this matter could not have been settled after the trial below. The voluminous record and printed matter indicates an expense to both of many times the amount involved.

Upon a consideration of the entire record, we think the verdict was so manifestly against the weight of evi-

dence as to show that it resulted from prejudice or a misunderstanding of the force and effect of evidence and the rules of law applicable thereto, and that the court erred in its rulings respecting those matters to which we have referred.

*Reversed and Remanded.*